1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11     FREDDIE LEE WILLIAMSON,                      No.  2:11-cv-1079-JAM-EFB P

12                     Plaintiff,

13           v.                                      ORDER AND FINDINGS AND
                                                     RECOMMENDATIONS
14     M.I. MARTINEZ, et al.,

15                     Defendants.

16

17          Plaintiff is a state prisoner proceeding without counsel in an action brought under 42

18   U.S.C. § 1983.  He proceeds against defendant correctional officer Martinez on an Eighth

19   Amendment excessive force claim.[1]  Martinez and plaintiff each move for summary judgment.[2]

20   ECF Nos. 68, 69.  Plaintiff opposes defendant's motion and moves "for discovery."  ECF Nos.

21   73-74, 75.  For the reasons set forth below, both summary judgment motions and the motion for

22   discovery must be denied.

23   /////

24   _____

25          [1] Plaintiff also asserted an excessive force claim against defendant Busig.  *See* ECF Nos.
     1, 11.  Busig, however, was dismissed from this action on April 1, 2013.  ECF No. 46.

26          [2] Plaintiff's motion for summary judgment actually argues that "there are genuine issues
27   of material fact concerning the use of force and to why no force was needed in this case."  ECF
     No. 69 at 4.  Thus, it is more in the nature of a supplemental filing in opposition to defendant's
28   motion.

### I.   Plaintiff's Allegations

Plaintiff alleges in his verified complaint that on January 9, 2010, Martinez ordered him to place his hands on the wall and submit to a pat-down search.  ECF No. 1 ("Compl.") at 4.  Plaintiff claims he immediately complied.  *Id.*  However, he was carrying a bag lunch at the time and Martinez ordered him to place his lunch on the ground.  *Id.*  Plaintiff questioned Martinez's order because the ground was wet.  *Id.*  Plaintiff states that Martinez then pulled out her pepper spray and repeated her order.  *Id.*  According to plaintiff, as he continued to question the order regarding his lunch and the wet ground, correctional officer Busig approached, pushed plaintiff in the back, grabbed his lunch, and threw it on the ground.  *Id.*  As a result, one of plaintiff's hands came off the wall by several inches.  *Id.*  Martinez then pepper-sprayed plaintiff twice in the face and once in the back of the head, as Busig slammed plaintiff to the ground.  *Id.*  Plaintiff claims that Martinez's use of pepper-spray amounted to excessive force in violation of the Eighth Amendment.  *Id.*

### II.   Plaintiff's Motion for Discovery

Plaintiff's discovery motion seeks to compel defendant's responses to several requests for production of documents seeking information about defendant's training and any complaints filed against her.  ECF No. 75.  The court previously denied a similar motion, noting that defendant had responded to the discovery requests with the representation that all responsive documents in defendant's custody and control had been produced.  ECF No. 67 at 2.  Plaintiff presents no basis for reconsidering that prior order.  Additionally, as defendant notes in her opposition to the motion, the discovery motion is untimely.  The deadline for completion of discovery, including the filing of any motions to compel, has long since passed.  *See* ECF No. 58 (Discovery and Scheduling Order) at 4 (requiring that motions to compel be filed no later than August 21, 2013).  For these reasons, plaintiff's motion for discovery is denied.

### III.   Summary Judgment Standard

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant

1    to the determination of the issues in the case, or in which there is insufficient evidence for a jury

2    to determine those facts in favor of the nonmovant.  *Crawford-El v. Britton*, 523 U.S. 574, 600

3    (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v.*

4    *U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment

5    motion asks whether the evidence presents a sufficient disagreement to require submission to a

6    jury.

7         The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims

8    or defenses.  *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to

9    "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

10   trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)

11   (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally,

12   under summary judgment practice, the moving party bears the initial responsibility of presenting

13   the basis for its motion and identifying those portions of the record, together with affidavits, if

14   any, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477

15   U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving

16   party meets its burden with a properly supported motion, the burden then shifts to the opposing

17   party to present specific facts that show there is a genuine issue for trial.  Fed. R. Civ. P. 56(e);

18   *Anderson*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

19        A clear focus on where the burden of proof lies as to the factual issue in question is crucial

20   to summary judgment procedures.  Depending on which party bears that burden, the party seeking

21   summary judgment does not necessarily need to submit any evidence of its own.  When the

22   opposing party would have the burden of proof on a dispositive issue at trial, the moving party

23   need not produce evidence which negates the opponent's claim.  *See e.g., Lujan v. National*

24   *Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters

25   which demonstrate the absence of a genuine material factual issue.  *See Celotex*, 477 U.S. at 323-

26   24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a

27   summary judgment motion may properly be made in reliance solely on the 'pleadings,

28   depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment

1   should be entered, after adequate time for discovery and upon motion, against a party who fails to

2   make a showing sufficient to establish the existence of an element essential to that party's case,

3   and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a

4   circumstance, summary judgment must be granted, "so long as whatever is before the district

5   court demonstrates that the standard for entry of summary judgment . . . is satisfied." *Id.* at 323.

6   To defeat summary judgment the opposing party must establish a genuine dispute as to a

7   material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that

8   is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at

9   248 ("Only disputes over facts that might affect the outcome of the suit under the governing law

10   will properly preclude the entry of summary judgment."). Whether a factual dispute is material is

11   determined by the substantive law applicable for the claim in question. *Id.* If the opposing party

12   is unable to produce evidence sufficient to establish a required element of its claim that party fails

13   in opposing summary judgment. "[A] complete failure of proof concerning an essential element

14   of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S.

15   at 322.

16   Second, the dispute must be genuine. In determining whether a factual dispute is genuine

17   the court must again focus on which party bears the burden of proof on the factual issue in

18   question. Where the party opposing summary judgment would bear the burden of proof at trial on

19   the factual issue in dispute, that party must produce evidence sufficient to support its factual

20   claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion.

21   *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Rather, the opposing party must, by affidavit

22   or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue

23   for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to

24   demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such

25   that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*,

26   477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

27   The court does not determine witness credibility. It believes the opposing party's

28   evidence, and draws inferences most favorably for the opposing party. *See id.* at 249, 255;

1  *Matsushita*, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the

2  proponent must adduce evidence of a factual predicate from which to draw inferences.  *American*

3  *Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J.,

4  dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts at

5  issue, summary judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th

6  Cir. 1995).  On the other hand, "[w]here the record taken as a whole could not lead a rational trier

7  of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475

8  U.S. at 587 (citation omitted); *Celotex*, 477 U.S. at 323 (if the evidence presented and any

9  reasonable inferences that might be drawn from it could not support a judgment in favor of the

10  opposing party, there is no genuine issue).  Thus, Rule 56 serves to screen cases lacking any

11  genuine dispute over an issue that is determinative of the outcome of the case.

12      Defendant's motion for summary judgment included a notice to plaintiff informing him of

13  the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil

14  Procedure.  *See Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952,

15  957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*, 849

16  F.2d 409 (9th Cir. 1988).

17  **IV.    Discussion**

18      Martinez seeks summary judgment on the grounds that: (1) plaintiff's excessive force

19  claim is barred by *Heck v. Humphrey*, 512 U.S. 477, 487 (1994); (2) that Martinez used force in a

20  good-faith effort to maintain and restore discipline; and (3) that she is entitled to qualified

21  immunity.   ECF No. 68.  For the reasons that follow, defendant's motion must be denied.

22      **A.  *Heck v. Humphrey***

23      The Supreme Court has held, where a judgment in the prisoner's favor in his section

24  1983 action would necessarily imply the invalidity of a deprivation of good-time credits, the

25  plaintiff must first demonstrate that the credits deprivation has been invalidated in order to state a

26  cognizable claim under section 1983.  *Edwards v. Balisok*, 520 U.S. 641, 644 (1997); *Heck v.*

27  *Humphrey*, 512 U.S. 477, 483, 486-87 (1994) (setting forth this "favorable termination" rule).

28  /////

5

1   The U.S. Court of Appeals for the Ninth Circuit has clarified that application of *Heck*'s favorable

2   termination rule "turns solely on whether a successful § 1983 action would necessarily render

3   invalid a conviction, sentence, or administrative sanction that affected the length of the prisoner's

4   confinement." *Ramirez v. Galaza*, 334 F.3d 850, 856 (9th Cir. 2003).  The *Heck* bar exists to

5   preserve the rule that challenges which, if successful, would necessarily imply the invalidity of

6   incarceration or its duration, be brought via petition for writ of habeas corpus.  *Muhammad v.*

7   *Close*, 540 U.S. 749, 751-52 & n.1 (2004).

8       Defendant submits evidence showing that as a result of the January 9, 2010 incident,

9   plaintiff was found guilty in a Rules Violation Report of refusing a direct order, and was assessed

10  a thirty-day loss of behavioral credits.  ECF No. 68-1, ¶ 22.  According to defendant, plaintiff has

11  not successfully challenged this disciplinary action through a habeas petition.  ECF No. 68-1,

12  ¶ 23.  Defendant concludes that plaintiff's claim is therefore barred by *Heck* and *Edwards*.

13  Defendant is mistaken.

14      Plaintiff's suit, if successful, would not necessarily imply the invalidity of the Rules

15  Violation determination.  First, this is an excessive force claim asserting that more force than was

16  appropriate was applied by Martinez, regardless of whether plaintiff violated a rule by

17  questioning the order to put the lunch on the ground.  When force is needed, only force that does

18  not violate the Eighth Amendment may be applied and review of any such claim of excessive

19  force would not necessitate reversal of the Rules Violation decision.  Thus, even assuming that

20  plaintiff violated a rule by questioning Martinez, plaintiff's claim that Martinez gratuitously

21  sprayed pepper spray in his face is nonetheless cognizable under section 1983.

22      Further, defendant's evidence also shows that plaintiff is serving an indeterminate life

23  sentence.  *See* ECF No. 68-3, Ex. B (documenting effect of credit loss on plaintiff's minimum

24  eligible parole date).  As a life-term prisoner, the 30-day loss of credits will have no effect on

25  plaintiff's maximum sentence.  *See Roman v. Knowles*, Case No. 07-cv-1343-JLS, 2011 U.S.

26  Dist. LEXIS 95410, at *38-40 (S.D. Cal. June 20, 2011), *adopted by* 2011 U.S. Dist. LEXIS

27  95286 (S.D. Cal. Aug 25, 2011) (finding the favorable termination rule inapplicable under such

28  circumstances).  And while the prison records indicate that the loss of credits has affected

1    plaintiff's minimum eligible parole date (MEPD), a change in plaintiff's MEPD will not

2    necessarily affect the length of his sentence.  *See Vandervall v. Feltner*, Case No. CIV-S-09-1576

3    DAD, 2010 U.S. Dist. LEXIS 72059, at *16-18, *adopted by* 2010 U.S. Dist. LEXIS 88704 (E.D.

4    Cal. Aug. 25. 2010) ("Rather, the MEPD determines when plaintiff may appear before the Board

5    of Parole Hearings (BPH) for his first parole suitability hearing.  The BPH, in turn, has the

6    exclusive authority to grant plaintiff parole and set any actual parole release date.").  Because

7    defendant has failed to demonstrate how the loss of credits resulting from the disciplinary

8    conviction will have any impact on the length of plaintiff's confinement, summary judgment

9    cannot be granted on the basis that plaintiff's excessive force claim is barred by *Heck* and

10   *Edwards*.  *See Ramirez*, 334 F.3d at 858 ("[W]here . . . a successful § 1983 action would not

11   necessarily result in an earlier release from incarceration . . . the favorable termination rule of

12   *Heck* and *Edwards* does not apply.")

13              **B.  Good-faith Effort to Maintain and Restore Discipline**

14              Defendant's next argument is that she did not use excessive force in violation of the

15   Eighth Amendment because the undisputed facts show that she used force in a good-faith effort to

16   maintain and restore discipline.  This argument simply underscores that disputed issues of

17   material fact preclude summary judgment in this case.

18              "When prison officials use excessive force against prisoners, they violate the inmates'

19   Eighth Amendment right to be free from cruel and unusual punishment."  *Clement v. Gomez*, 298

20   F.3d 898, 903 (9th Cir. 2002).  In order to establish a claim for the use of excessive force in

21   violation of the Eighth Amendment, a plaintiff must establish that prison officials applied force

22   maliciously and sadistically to cause harm, rather than in a good-faith effort to maintain or restore

23   discipline. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).  In making this determination, the court

24   may evaluate (1) the need for application of force, (2) the relationship between that need and the

25   amount of force used, (3) the threat reasonably perceived by the responsible officials, and (4) any

26   efforts made to temper the severity of a forceful response.  *Id.* at 7; *see also id.* at 9-10 ("The

27   Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from

28   constitutional recognition *de minimis* uses of physical force, provided that the use of force is not

1   of a sort repugnant to the conscience of mankind." (internal quotation marks and citations

2   omitted)).

3        According to defendant, application of the *Hudson* factors reveals that she applied force in

4   a good-faith effort to maintain and restore discipline and not maliciously or sadistically to cause

5   harm.  She claims she ordered plaintiff to put his lunch down three times, and each time, he

6   refused.  ECF No. 68-2 ("Martinez Decl.") ¶¶ 4-5, 7-8.  She claims that Officer Busig issued the

7   same order, and that plaintiff refused for a fourth time.  *Id.* ¶¶ 9-10.  When plaintiff's right hand

8   moved away from the wall, defendant claims she ordered him to put it back, but he refused.  *Id.*

9   ¶¶ 12-13.  At this point, defendant claims she believed that plaintiff "was reaching for a weapon

10  from his waistband and feared for the safety" of both Busig and herself, prompting her to spray

11  plaintiff in the face with a two-second burst of pepper spray.  *Id.* ¶¶ 14-15.  Defendant argues her

12  conduct did not amount to excessive force in violation of the Eighth Amendment because she was

13  confronted with an inmate who repeatedly refused to obey direct orders and appeared to be

14  reaching for a weapon. She claims that under the circumstances, she needed to quickly

15  incapacitate plaintiff so that Busig could take him to the ground.  In addition, she notes that the

16  extent of plaintiff's injury was minimal, as he was only briefly exposed to pepper spray, and was

17  subsequently decontaminated.  *See* ECF No. 68-4, ¶ 6, Ex. A; ECF No. 74 at 1-5 ("Pl.'s Decl.")

18  ¶ 16.

19       According to plaintiff, defendant pulled out her pepper spray as soon as he initially

20  refused to put his lunch down.  Pl.'s Decl. ¶ 6.  Plaintiff claims that when she asked him a second

21  (and final) time to put his lunch down, he again tried to explain to her that the ground was wet.

22  *Id.* ¶¶ 5, 7; ECF No. 73 at 2.  He denies ever receiving a similar order from Busig, claiming that

23  Busig just approached him, grabbed his lunch, and threw it to the ground.  ECF No. 73 at 2.  He

24  also denies ever receiving an order from defendant to place his hand back on the wall prior to

25  being sprayed.  *Id.*  He claims defendant had already begun spraying him, without warning, by the

26  time she actually ordered him to put his hand back on the wall.  Pl.'s Decl. ¶ 9.  He argues that

27  defendant's supposed fear that he was reaching for a weapon was not reasonable because his left

28  hand never came off of the wall and he remained facing the wall.  ECF No. 73 at 2-3; Pl.'s Decl.

1  ¶ 24.  Plaintiff also maintains that his hand had only come off the wall by two inches.  ECF No.

2  69, Compl, § IV.

3      Taking plaintiff's version of what occurred as true, he complied with defendant's initial

4  orders to turn toward the wall and put his hands on the wall.  When plaintiff questioned

5  defendant's order to place his lunch on the damp ground, she pulled out her pepper spray.  After

6  refusing defendant's second and final order to put his lunch down, explaining that the ground was

7  wet, Officer Busig grabbed the lunch, and plaintiff's right hand came off the wall by about two

8  inches.  Without warning, defendant sprayed him in the face with pepper spray.

9      Plaintiff himself is a percipient witness to the event.  While he and Martinez tell differing

10  accounts of what occurred, if plaintiff is believed a reasonable jury could find in his favor.  Under

11  his version, although he balked at two orders to put his lunch on the ground, he did not engage in

12  any threatening act or physically resist either officer.  Moreover, Martinez does not defend the use

13  of force as having been prompted by plaintiff's failure to comply with the orders to put the lunch

14  down.  Martinez claims she sprayed plaintiff because she believed he was reaching for a weapon

15  when his right hand came off the wall.  ECF No. 68-2 at 2 (Martinez Declaration at ¶¶ 12 – 15.)

16  In considering whether there was an immediate threat, it is not enough for there to be "a simple

17  statement by an officer that he fears for his safety or the safety of others . . .; there must be

18  objective factors to justify such a concern."  *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir.

19  2001).  Whether plaintiff committed any specific act which could support a reasonable belief that

20  spraying plaintiff in the face was necessary turns on disputed facts.  If, as plaintiff contends, he

21  remained facing the wall with his left hand in contact with the wall, and his right hand moved

22  away from the wall by two inches only as the result of Busig grabbing the lunch from him

23  without warning, there is little, if any, objective factors to justify the concern articulated by

24  Martinez and a reasonable jury could conclude that her use of pepper-spray to "quickly

25  incapacitate" plaintiff was not objectively reasonable.  *See* ECF No. 68-2 at 2.  Moreover,

26  plaintiff maintains that he was not ordered to put his hand back on the wall prior to being sprayed,

27  and apart from defendant's "simple statement," there is no reasonable basis for believing that

28  plaintiff was reaching for a weapon.

For these reasons, plaintiff has met his burden of establishing that a triable issue of fact exists as to whether defendant's use of force in pepper-spraying him was malicious and sadistic for the purpose of causing harm.

## C. Qualified Immunity

Finally, defendant contends she is entitled to qualified immunity.  Qualified immunity protects government officials from liability for civil damages where a reasonable person would not have known their conduct violated a clearly established right. *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987).  In determining whether the doctrine of qualified immunity provides a government officer protection, a court must make two inquiries: 1) do the facts alleged show that the officer violated a constitutional right; and 2) was the constitutional right well established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pearson v. Callahan*, 555 U.S. 223 (2009) (courts have discretion to decide which of the two *Saucier* prongs to address first).  A plaintiff invokes a "clearly established" right when "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson,* 483 U.S. at 640.

Defendant's qualified immunity argument rests on her disputed version of the January 9, 2010 encounter and her contention that there was no constitutional violation. *See* ECF No. 68 at 9.  As discussed above, the material facts are in genuine dispute as to whether there was a constitutional violation.  Specifically, there is a dispute as to whether defendant reasonably perceived plaintiff as a threat to officer safety.  If there was no constitutional violation, then of course there was no violation of a clearly established constitutional right.  But the material factual disputes which preclude summary judgment on that question also preclude summary judgment on her assertion of qualified immunity. *See LaLonde v. County of Riverside*, 204 F.3d 947, 953 (9th Cir. 2000) ("If . . . there is a material dispute as to the facts regarding what the officer or the plaintiff actually did, the case must proceed to trial").

## V.   Order and Recommendation

For the reasons stated above, IT IS HEREBY ORDERED that plaintiff's motion for discovery (ECF No. 75) is denied.

/////

1    Further, IT IS HEREBY RECOMMENDED that both plaintiff's and defendant's motions

2    for summary judgment (ECF Nos. 69, 68) be denied.

3    These findings and recommendations are submitted to the United States District Judge

4    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

5    after being served with these findings and recommendations, any party may file written

6    objections with the court and serve a copy on all parties.  Such a document should be captioned

7    "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

8    objections shall be served and filed within fourteen days after service of the objections.  The

9    parties are advised that failure to file objections within the specified time may waive the right to

10   appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez*

11   *v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

12   DATED:  August 5, 2014.

13                                   EDMUND F. BRENNAN
14                                   UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28